Filed 3/26/13  P. v. Benites CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>VICENTE BENITES,<br><br>    Defendant and Appellant. | D061110<br><br><br>(Super. Ct. No. CRN27532) |


APPEAL from a judgment of the Superior Court of San Diego County, K. Michael Kirkman, Judge.  Affirmed.


Vicente Benites appeals from a judgment convicting him of voluntary manslaughter.  He argues the judgment must be reversed due to the cumulative effect of error that occurred in closing argument by the prosecutor, the court's response to a jury question, and the court's refusal to exclude a rebuttal witness's testimony.  We reject these contentions of error, and hence find no cumulative error.

FACTUAL AND PROCEDURAL BACKGROUND

The homicide in this case occurred in 1989, but the crime was not prosecuted until 2011 because defendant absconded to Mexico. For purposes of resolving the issues in this appeal, we need only briefly summarize the factual record.

On May 20, 1989, defendant shot and killed Margarito Navarrete while they were attending a birthday party. Defendant and the victim were from the same small town in Mexico, where there had been a feud between their families resulting in several killings. According to witness testimony, there were rumors that defendant's brother had killed the victim's brother, and, in revenge, the victim and several accomplices killed defendant's brother and father.

On the night of the shooting in 1989, defendant and his cousin, Epifanio Flores, encountered the victim at the party. Flores came towards the victim with a knife and stabbed him once, cutting his arm. Other men at the party quickly intervened to stop Flores. However, defendant then pulled out a gun and repeatedly shot the victim. Prosecution witnesses testified that the victim did not have a weapon and did not engage in any threatening behavior. The prosecution's theory of the case was that Flores committed first degree premeditated murder for revenge.

Defendant called numerous character witnesses to testify that he was not a violent person. Defendant also testified on his own behalf, stating he had heard the victim was asking about his family; he told his cousin Flores about this; and he interpreted this to mean the victim wanted to hurt his family. When defendant saw the victim at the party he became afraid, and he went to his car and got a gun. When Flores attacked the victim

2

with a knife, the victim had his hand on his waist and defendant thought the victim "was going to take something out" and attack Flores and then him.

The jury was instructed on self-defense and on voluntary manslaughter based on heat of passion or unreasonable self-defense. The jury convicted defendant of voluntary manslaughter with a finding that he personally used a firearm. He received an eight-year prison sentence.

## DISCUSSION

Defendant asserts the jury might have found reasonable, rather than unreasonable, self-defense if not for the cumulative effect of several errors. He asserts that portions of the prosecutor's closing argument misled the jury about self-defense principles. He also challenges the court's response to the jury's request (after deadlock) for definitions relevant to self-defense. Finally, he argues the trial court erred in denying his motion to exclude a rebuttal witness's testimony.

We find no error.

## I. *Prosecutor's Closing Arguments*

A prosecutor has wide latitude to vigorously argue the prosecution's case; however, it is improper for the prosecutor to misstate the law. (*People v. Hill* (1998) 17 Cal.4th 800, 819, 829.) When evaluating claims of improper argument to the jury, the question is whether there is a reasonable likelihood the jury construed the prosecutor's statements in an objectionable manner. (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.)

Defendant asserts the prosecutor misled the jury about self-defense principles in the following portions of her rebuttal argument:

> "Common sense and logic tells us that you don't run towards the thing you're afraid of. You don't run into a burning building. You don't run towards someone who you think is about to kill you with a knife or a gun. And in this case, the defendant did not run towards [the victim] because he thought he was going to kill him. He ran towards him because he wanted to kill him . . . for revenge, and that's why this is first degree murder.
>
> "This is not a self-defense case. Let me tell you why. *Self-defense . . . is a sacred right.* . . .The Legislature . . . tell[s] us, 'At this particular time . . . because of what happened, *we are giving you a freebie*.' We're saying, 'We understand what happened here, and you had a right at that time.' It's one of the rights we best enjoy in the United States of America, but it's a very limited right.
>
> "In this case, i[t] is not a self-defense case. This is not a case where society tells the defendant, 'You were allowed to kill on May 20th, 1989, and we're not going to hold you accountable for that crime.' This is not that type of case. It's a limited right because our country discourages eye for an eye, discourages an opportunity where, if someone cut off my arm, six months later, I can go over and cut off that person's arm, too. Our society does not allow that. There's enough cooling off period for that." (Italics added.)[1]

In another portion of rebuttal, the prosecutor argued:

> "Let's talk about imperfect self-defense. It's an actual but unreasonable belief in the necessity to defend against immediate peril to life or great bodily injury. Basically, *you're about to die instantly, and the only way to avoid that is to kill right now*. That's not this case, either. It does not apply, and the defendant does not get that discount. Because immediate . . . deadly force was not necessary in this case. . . . [¶] . . . The defendant did not believe, based on the evidence, that he needed to defend

---

[1] At trial, defense counsel made no objection to this argument.

4

himself against immediate harm. There were no weapons in [the victim's] hands . . . ." (Italics added.)[2]

On appeal, defendant asserts the prosecutor misled the jury when she described self-defense as a "sacred right" and "freebie," and when she suggested that self-defense requires a belief "that one needs to 'instantly' kill someone."

Read in context, there is no reasonable likelihood the prosecutor misled the jury about self-defense principles by characterizing the right to self-defense as a sacred right and a freebie. Calling a defense a sacred right means that it is a value held in high esteem in our society; this characterization inures to the defendant's benefit because it tells the jury that if it found defendant acted in self-defense he could not be found guilty even though he killed someone.

Further, characterizing self-defense as a "freebie" does not rise to the level of a misstatement of the law. A successful self-defense claim allows a person who killed another person to go free. There is no reasonable likelihood that the jury interpreted the reference to "freebie" to mean anything other than this well-recognized concept.

With respect to the prosecutor's suggestion that self-defense requires a belief in the need to kill instantly (i.e., the defendant is about to die instantly and needs to "kill right now"), defendant posits that self-defense requires the belief in a *threat* that must be dealt with *instantly*, but it does not require the belief in the need to *instantly kill* the victim. The contention is unavailing. Self-defense requires both a belief in imminent harm *and* a

---

2    At trial, defense counsel objected to this portion of the prosecutor's argument on the basis that the prosecutor had misstated the law. In response, the court admonished the jury to read carefully and follow the instructions as they related to imperfect self-defense.

belief that *immediate* use of deadly force is necessary. (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1094 [defendant must believe that "*immediate defense against the impending danger* was the only means of escape from great bodily injury or death"], italics added; CALCRIM No. 505 ["defendant reasonably believed that [he or someone else] was in imminent danger" and "defendant reasonably believed that the *immediate use of deadly force was necessary* to defend against that danger" (italics added)].) The prosecutor did not err when stating that the defendant must believe that he needs to kill the victim "right now."

## II. *Court's Response to Jury Question*

Defendant also raises a claim of error based on the manner in which the court responded to a jury question after it was deadlocked.

### *Background*

During deliberations, the jury informed the court that it was not able to reach an agreement. After being queried by the court, the jury stated that it might be helpful if it was provided a definition of "imminent danger" and "reasonably necessary force."

The jury's request for definitions was derived from the self-defense instruction it received (CALCRIM No. 505), which included the following description of the self-defense requirements:

> "1. The defendant reasonably believed that he or someone else was in *imminent danger* of being killed or suffering great bodily [injury]; [¶] 2. The defendant reasonably believed that the immediate use of deadly force was necessary to defend against that danger; [¶] AND [¶] (3) The defendant used *no more force than was reasonably necessary* to defend against that danger.

6

"Belief in future harm is not sufficient, no matter how great or how likely the harm is believed to be. The defendant must have believed there was *imminent danger* of great bodily injury to himself or someone else. Defendant's belief must have been reasonable and he must have acted only because of that belief. The defendant is only entitled to use *that amount of force that a reasonable person would believe is necessary* in the same situation. If the defendant used more force than was reasonable, the killing was not justified. . . .

"If you find that [the victim] threatened or harmed the defendant or others in the past, you may consider that information in deciding whether the defendant's conduct and beliefs were reasonable. . . . [¶] Someone who has been threatened or harmed by a person in the past, is justified in acting more quickly or taking greater self-defense measures against that person." (Italics added.)

After discussing the jury's note with counsel, the trial court proposed responses to the jury's question, and both counsel concurred. Accordingly, the trial court provided the following responses to the jury:

" 'Imminent danger' as used in these instructions, means the danger must have existed or appeared to the defendant to have existed, at the time that shots were fired. In other words, the danger must appear to the Defendant as immediate and present and not prospective or even in the near future. And imminent danger is one that, from appearances, must be instantly dealt with.

"With respect to the requested definition of 'reasonably necessary force,' I reference you to CALCRIM Instruction 505 and, generally, to CALCRIM Instruction 200 regarding words or phrases used during this trial."

*Analysis*

The Attorney General asserts defendant's challenge to the court's response to the jury's question is forfeited on appeal because defense counsel agreed with the court's response. Even absent an objection, a trial court's instructional response to a jury note is not forfeited if the instruction affected the defendant's substantial rights. (*People v.*

7

*Butler* (2009) 46 Cal.4th 847, 876-877, 882, fn. 18; Pen. Code, § 1259.) However, there was no error. The portion of the court's response addressing the meaning of imminent danger was derived from *People v. Aris* (1989) 215 Cal.App.3d 1178. The court correctly told the jury that the defendant must have believed there was imminent danger at the time the shots were fired. (*Id.* at p. 1187.) The court also properly directed the jury to the definition of reasonably necessary force as explained in CALCRIM No. 505, and to CALCRIM No. 200 which told the jury to give words their ordinary meaning unless instructed otherwise.

There was no error in the court's response to the jury's request for the definitions.

### III. *Refusal To Exclude Officer Sweeney's Testimony*

Defendant asserts error based on the trial court's refusal to grant his motion to exclude the testimony of Officer Barry Sweeney on the basis that the officer was present in the courtroom during part of defendant's testimony.

During its rebuttal case, the prosecution presented the testimony of Officer Sweeney, who investigated the 1989 shooting a few hours after its occurrence. Officer Sweeney testified that when he interviewed Flores on the night of the shooting, Flores told him that while they were in the garage "all of a sudden, [defendant] pulled a gun out of his waistband and shot [the victim] numerous times." Flores claimed that as soon as defendant started shooting, Flores reached into his pocket to grab a knife, but he was stopped by another person. When Officer Sweeney asked Flores why defendant would shoot the victim, Flores answered that two years earlier the victim had killed defendant's brother. When Officer Sweeney asked if defendant had mentioned any problems with the

8

victim, Flores responded that defendant had not mentioned any problems. Officer Sweeney testified that Flores never stated during the interview that he had heard that the victim was in town looking for him and defendant to kill them.

Prior to Officer Sweeney's testimony, defense counsel had moved to exclude the testimony because Officer Sweeney had been in the courtroom earlier that afternoon during a portion of defendant's testimony, which was contrary to the court's pretrial ruling excluding witnesses from the courtroom. After an unreported sidebar conference, the court ruled that the officer could testify. After Officer Sweeney testified, the court summarized on the record its reasons for allowing him to testify and discussed the matter further with the parties. The court stated that shortly before the afternoon break, it noticed that Officer Sweeney was in the courtroom while defendant was testifying. The court did not know at what point the officer had arrived, but it knew he had not been in the courtroom "for a long period of time." The prosecutor was unaware of his presence. When the prosecutor was told the officer was there (apparently at the time of the afternoon break), she told him to wait outside the courtroom, which he did.

The court explained that it denied the defense request to exclude Officer Sweeney's testimony because his presence was "an innocent mistake on his part." The portion of defendant's testimony heard by the officer involved defendant's demonstration of the manner in which he approached the victim at the time of the shooting, which would not have "in any way, shape or form" impacted Officer Sweeney's narrow testimony about what Flores said to Officer Sweeney during his interview. Further, Officer Sweeney's testimony was based on the information he had written in his 1989

9

police report, and if he had testified inconsistently with his report, defense counsel would have elicited this on cross-examination. Hence, the court concluded there was no prejudice to defendant.

Defense counsel agreed that the prosecutor was acting in good faith and was unaware that Officer Sweeney had been present in the courtroom, and agreed that Officer Sweeney most likely did not hear testimony from defendant that was related to the subject of Officer Sweeney's testimony. Nevertheless, defense counsel argued that the testimony of a witness who violates a witness exclusion order should automatically be excluded. The court rejected this approach and adhered to its ruling based on the absence of any prejudice to defendant.

A witness's violation of a witness exclusion order does not alone "make such witness incompetent nor furnish grounds for a refusal to permit him to testify." (*People v. Duane* (1942) 21 Cal.2d 71, 80.) Generally, matters related to witness exclusion "lie[] within the sound discretion of the trial judge." (*People v. Ortega* (1969) 2 Cal.App.3d 884, 894; see *People v. Young* (1985) 175 Cal.App.3d 537, 542.) A trial court abuses its discretion if it exercises the discretion in an arbitrary, capricious, or patently absurd manner that results in a manifest miscarriage of justice. (*People v. Carrington* (2009) 47 Cal.4th 145, 195.)

Defendant has presented no argument to refute the court's finding that Officer Sweeney's testimony was not impacted by his improper presence in the courtroom. Defendant merely argues that Officer Sweeney's testimony "did contribute to the prosecutor's ability to impeach [defendant's] testimony on a salient point, whether there

10

were rumors the victim was in town looking for him before the murder." The fact that Officer Sweeney's testimony supported the prosecution's case does not show that the court erred in finding Sweeney's testimony was not influenced by his presence in the courtroom during defendant's testimony. Without some indication that Officer Sweeney's testimony was improperly impacted by his presence in the courtroom during defendant's testimony, defendant has not shown the court abused its discretion in admitting the officer's testimony.

## IV. *No Cumulative Error*

Because we have found no error, defendant's claim of cumulative error fails.

## DISPOSITION

The judgment is affirmed.

HALLER, Acting P. J.

WE CONCUR:

AARON, J.

O'ROURKE, J.

11